Francis O'Brien, counsel on behalf of Appellant. Judges, I would divide my time with your permission, seven minutes and reserving three minutes for rebuttal. In the first seven minutes, I should like to address first the fact that I take this case over for my partner, Jackie Regal, who died of a heart attack on October of the past year. With that in mind, there is a slight change when we change counsel of how I view those facts. So my first would be to point out some additional facts from a new perspective, which would be mine versus my dead partner's. Then I would address the three issues which are presented in the briefs, that of the lack of complete diversity requiring a reversal and remand to state court, the lack or denial as an abuse of discretion when the appellant sought to amend or dismiss his action, and then the third, the grant of the summary judgment motion. Turning to that first issue, if it please the Court, there are a torrid set of facts which didn't make the brief. And if I could, I would tell the Court about that. Aetna is a mammoth insurance company. At an appropriate time, it merged with U.S. health care and became even larger. It has two significant presence, one on the East Coast, one on the West Coast. On the East Coast, they developed a program of direct marketing which was extraordinarily successful. It's in-house marketing of their insurance policies or programs directly to their clients. On the West Coast, on or about 1999, they sought to introduce this same direct marketing concept. It was an abysmal failure. In Fresno, not far from here, the brokers rebelled. They shut down Aetna. No broker would sell an Aetna policy because the direct marketing policy had only one goal, and that's the public policy decision which is put to this Court directly. Is it in the interest of the state of California, is it in the interest to eliminate the broker in the chain of authority, starting at the carrier at the top, broker in the middle, and the ultimate client at the end? Ultimately, the individuals who make up the clients. By the way, this is a case. How is that policy issue before us? It's before you in the breach of contract, Your Honor. Here we have a case where Mr. Koerner and Aetna entered into a broker-carrier contractual agreement. That contract, which is one of the fundamental issues of this case, was entered into between Clay Koerner and Aetna U.S. Healthcare of California, Inc., a separate and distinct corporation registered to do business in this state, and by admission of defendant, a company which at all times acted separate and distinct from the parent corporation. Was Mr. Koerner the broker of record for Heritage Medical at the time of Aetna's alleged misrepresentations? Yes, Your Honor. And I would suggest to the Court, by your question I know you're familiar, therefore, with the concept of broker of record. But Mr. Koerner was the broker of record up until December 31st midnight. December 31st what year? Oh, I'm sorry, 1999. The change in guard occurred January 1st, 12.01 a.m. And I should point out to the Court, because this is significant, Mr. Koerner was the broker of record from the period 1990 all the way through to 1999, midnight, December 31st, a period just one minute shy of ten years. Now, who is Heritage really? It's Dr. Richard Merkin. This is a man of considerable wealth who had all of these medical facilities that he leases or rents back to insurance companies to provide medical care to their clients. Now, Dr. Merkin has groups in Bakersfield, High Desert, Palm Springs, out at Desert Medical, all totally at 1,500 workers or employees. Mr. Koerner was the agent of record for all 1,500 for a period of ten years. Did the Court note in defendant's brief that, oh, they were dissatisfied with Mr. Koerner? The reason the summary judgment failed, Judge Coyle decided in the Court below, was because they were firing Koerner anyways. Sure. Ten-year relationship and they didn't like him. I don't even think I need to address that. Let me tell you what maybe was at issue. You know, Counsel, in the time that you have, it might help if you focused on some of the issues that you'd like us to decide in your favor. Thank you, Your Honor. That first issue and the most compelling for this Court to reverse is the lack of complete diversity. Plaintiff sued, always intended to sue, and attached a contract saying it had sued, Aetna U.S. Healthcare of California. As this Court knows, there is no diversity between a California citizen and a corporation registered to do business here. It seems the District Court believed that you had not sued Aetna Healthcare of California. You'd only sued Aetna Healthcare, a Connecticut corporation or whatever it was. Pennsylvania. Pennsylvania, excuse me. And your complaint was never amended to add the California subsidiary or whatever you want to call it. We were denied the right to amend. And did you appeal the denial of the right to amend to add Aetna of California? It was, no, this is the appeal of that decision, Your Honor. It was, in fact, the denial to amend and the summary judgment were just weeks or months apart. In addressing that issue, Your Honor, I think it's significant to note that the contract attached to the complaint identified that it was between Mr. Koerner and Aetna U.S. Healthcare of California, and in the body of the complaint we allege that that was what the case was about. Now, we sued a defendant that did not exist. We would argue to the Court here, as we did below, Aetna was so gigantic, when we tried to determine who to sue, we couldn't determine who was who. Does it pose a problem for your position that we have before us the precise pleadings? We have the record. We know what was alleged and what wasn't. Now, what was intended and what you wish you had done, how does that enter when we look to see what the district court did? Doesn't the district court have an obligation to look specifically at the record before it does the dismissal that it did? I think, Judge Farris, that you've raised the right point. Let's look at what the Court did have in front of it. The answer that was filed in this case was filed on behalf of Aetna U.S. Healthcare of California. Look just below the defendant's representation in the upper left-hand corner of the pleading, and the first statement is, answer filed by Berger-Kahn on behalf of Aetna U.S. Healthcare of California. And then paragraphs 33 and 51 refer to the contract attached to our complaint, which specifically is between the plaintiff and Aetna U.S. Healthcare of California. So those facts, in answer to your question, were before the Court. And if there's no doubt on our motion to remand and our motion to amend and our motion to dismiss, we again inform the Court. And as this Court knows, in a leading Ninth Circuit Court of appeals, Ninth Circuit Court decision, Gause v. Miles, I'm sorry, Caterpillar v. Lewis, 519 U.S. 61 1996 case, the discovery of the lack of jurisdiction through complete diversity is a topic for reversal and remand back to the State Court at any time, even after final judgment, when the fact becomes known to the Court. If you don't have jurisdiction, it goes back and is remanded to the State Court. That jurisdiction remains valid even after a final judgment, and that's a U.S. Supreme Court case. I miscited it as the Ninth Circuit. That's a U.S. Supreme Court case, Caterpillar v. Lewis. I hope that, Judge, that answers your question. There are many additional facts which were before the Court. The Court was explicitly aware, Magistrate Beck and counsel, myself, repeatedly discussed the fact that Aetna U.S. Healthcare was a necessary and indispensable party here. In fact, one of the suggestions was, instead of amending our complaint, that we should merely get a stipulation saying that the judgment would cover Aetna U.S. Healthcare of California, because Magistrate Beck was trying to circumvent the jurisdictional issue, but we refused. And that refusal meant that he had to remand. If I could continue, then, that lack of jurisdiction is our primary court. Judge Trott, I may address you on this issue because I think you raised it. Our primary contention here, the one, our issues are discussed in the brief, but the major issue here is there is no complete diversity. What's the public policy behind complete diversity? To protect the out-of-state litigant from prejudice by the state courts. Aetna U.S. Healthcare of California employs thousands of persons in California. It's a major employer. It generates hundreds, if not tens of millions, if not hundreds of millions of dollars in revenue in the state. I don't think they're going to be prejudiced by the state courts as an out-of-state fellow. By the way, they are a state corporation. Their principal place of doing business is here. Under your nice circuit standard, Judge, if I can be so bold, the total activities say Mr. Kerner only ever had business dealings with Aetna U.S. Healthcare of California employees in California at their primary place of business in California with managing officers, directors, and revenue generated in California from California citizens. Mr. O'Brien, your time has run. Thank you, Judge. We'll allow you to reserve some time to rebut, and we'll hear from the other side. Thank you. Thank you very much, Your Honor. Good morning. May it please the Court. I'm Ronald Alberts on behalf of the Defendant and Appellee. I think that the record is quite complete and provides you with ample evidence to uphold the judgment of Judge Coyle. It is clear, and I think the overriding fact that should be recognized here, not to diminish the importance of these proceedings, but the overriding fact here is that there is absolutely nothing that Aetna did, as evidenced by the declarations of Heritage Provider Group, which deprived Mr. Kerner of any benefit. Every action of Aetna was in conformance with the alleged representations or misrepresentations that he has in his complaint. When it comes to the issue of the motion to remand, the first issue that is raised on appeal, at that time the named defendant was Aetna U.S. Healthcare, a Connecticut corporation. Aetna U.S. Healthcare, in fact, Aetna U.S. Healthcare, Inc. There is no such entity as Aetna U.S. Healthcare standing alone. At that time, there was an entity known as Aetna U.S. Healthcare, Inc. That entity is the entity which we presumed was the target defendant. That presumption was based upon a number of facts. One of them is that the attached contract exhibit to the complaint recited in the opening paragraph that it was between Aetna U.S. Healthcare, Inc., the Pennsylvania corporation, and Mr. Kerner. The second fact is that Aetna U.S. Healthcare, Inc. was the entity which paid the broker commissions to Mr. Kerner. And lastly, all of the individuals who were named throughout the complaint as having made misrepresentations to Mr. Kerner were employees of Aetna U.S. Healthcare, Inc. Mr. O'Brien says if we look at your answer, we'll find out that the answer was on behalf of Aetna Healthcare of California. That is not true. That is not true? That is not true. The answer, there is a, in the answer itself, in the body of the answer, it is on behalf of Aetna U.S. Healthcare, Inc. Is there anything in the answer at all that talks about Aetna Healthcare of California? Yes, there is. So it is true. What does it say? No, it says under the name of the counsel in the upper left-hand corner, there's a representation that we're appearing for Aetna U.S. Healthcare of California, Inc. It was an error. Well, so what Mr. O'Brien said is true. It's right on there. It's not. Well, that may be true. It is or it isn't. I'm sorry? It is or it isn't. That those words are contained on the answer. Yes, they are. The answer is part of the right answer. And now you're telling us that was a mistake. I'm saying that that reference in the upper left-hand corner, counsel Thor, is a mistake. I'm also saying that everywhere else within that document, including in the preamble, comes now defendant Aetna U.S. Healthcare, Inc., erroneously served as Aetna U.S. Healthcare, and in every other instance within the document, it refers to Aetna U.S. Healthcare, Inc. That's what I'm saying. And throughout this case, when it was argued, we explained the relationship of Aetna U.S. Healthcare, Inc., and as well explained the relationship of Aetna U.S. Healthcare of California, Inc., the other subsidiary. How does it let anybody off the hook for the parent corporation to say, well, we're going to pay the judgment if there is one? Well, that goes to an issue that isn't actually before the court, and that would be the issue of the motion to amend, and that was never raised on appeal in the opening brief. It wasn't the basic issue. They wanted to get into state court, and Aetna did not want that case in state court. And they kept saying most of the transactions took place in Pennsylvania and so on, and yet there doesn't seem to be evidence that that's what happened. Everybody was out here, and then when they disposed of his services, they just went ahead with the contract, and they never did get that issue resolved. Well, it was not, well. Isn't that why Aetna? It's clear that the entity which was actually named in the complaint, or for which we answered at the U.S. Healthcare Inc., who had the various relationships that I've described, was not a California corporation. We presented more than ample evidence describing where their principal place of business was, their state of incorporation, where they conducted business, and I think that is what Judge Coyle relied upon in making his ruling. A question, please. Then they come in and they say, well, we want to dismiss this whole thing. Voluntarily we want to dismiss the whole thing. Yes, they come in. And why was it within the judge's discretion to say no on that? It was, in fact, I believe I would go so far as to say it was mandated that the court say no to that. And the reason I say that is because the plaintiffs waited 10 months, okay, until approximately three months before trial, until all of the discovery had been completed, until they had made motion after motion after motion trying to relieve themselves in one way or another from their failure to demand a jury. First, initially they failed to demand a jury. We went to the status conference. That was brought up. They made a motion to extend the time within which to request a jury. That was denied. Then they made the motion, or I may be out of order. At one point they made the motion to remand as well. I guess that was the first motion. Then they made the motion for leave for extra time to file a jury trial. Then they made the motion to amend their complaint so they could destroy diversity. Then they made their motion to dismiss. All of this happens well after the case is on its way. We have taken depositions after depositions. We have made motions. We, in fact, had our motion for summary judgment on file at the time of the argument on the motion to remand. In every juncture, and if you look at the opinions of the court and the argument as well, which has been provided in the record, at every juncture Judge Coyle and Judge Beck, or Magistrate Beck, understood and made reference to the fact this is simply a guise, essentially, to obtain the jury trial you waived before. No, it isn't. There's something in addition in this case that differentiates it from Russ, and that is their desire to sue the California entity. As an element, this doesn't appear in Russ. I'll grant you that. However, that, the issue of the court's ruling on the motion to amend, again, was never raised in the opening brief here and, therefore, is not before this court. You know, I mean, I don't mean to disrespect you personally, but your hands aren't so clean either. I mean, you didn't file a notice of removal. It resulted in a default judgment being entered. I mean, this case is a procedural mess. I'll grant you, and I think that that issue was certainly briefed extensively before the judge at the outset. As we said, we were, in fact, only 19 days late in filing. I don't know if that's late, but it was 19 days following the notice of removal that we filed with the Kern County Superior Court notice that we had removed the action. And that was done that much late, if that's late, because of problems that we had and we sought relief from our inadvertence. And the court granted that relief. We're also late in notifying the state of the removal. That's what I'm speaking of. We weren't late in any other respect. And they claimed because the lawyer had a problem with his father, his father had been ill or something of that nature. Said his father was ill and that's why he couldn't come on time. That was me. Yes, it was my father who was ill, yes. But we were, in fact, we did file it with the state. We had, in fact, already served them with the answer filed in the federal court at the time they ran into state court seeking our default. I'll grant you we have our procedural problems here that were created. I think, however, all in all, there's no question but that each of the rulings is fully supported by the record. Certainly the rulings on the motion for summary judgment are more than amply supported by the declarations. There is no way in which any of those claims for relief could possibly have prevailed based upon the fact that the people at Heritage said they terminated the relationship before it had anything to do with them. Was Mr. Kerner the broker of record for Heritage at the time of this change, the alleged misrepresentations? Mr. Kerner was the broker of record for the policies that were in effect at that time. But as Judge Coyle recognized and as we argued below, there is a transition period for each next period of insurance. And therefore, for all insurance to be issued as of January 1, 2000, Mr. Kerner had been terminated as the broker of record. And one other fact I should bring up, there was a representation that Mr. Kerner, in 1999, was the broker of record for all of the Heritage entities. That's simply not true whatsoever. The evidence is more than complete that Mr. Kerner was only the broker of record, if for any policy at all, was one policy with High Desert. Could you quickly tell us what, in your view, is the narrow issue before this Court as this record is postured? Well, I think it's hard to come up with a single narrow issue. There are three issues. The three would be the propriety of the motion to remand, which I believe is obviously supported by the fact that the named entity was at the U.S. Healthcare, Inc. throughout, as we've described. The second would be the motion to dismiss, and I believe that that's reviewed for an abuse of discretion. And there was ample rationale for Judge Coyle to believe that the sole purpose was, as in Russ, to secure the jury trial. And the third issue is the propriety of granting the motion for summary judgment, and I believe the evidence is overwhelming in that regard. All of the other causes, all of the other motions, including the motion to amend, were not raised on appeal and, therefore, are not before the Court. Thank you, Counsel. Thank you, Your Honor. Mr. O'Brien, could you bring with you your opening blue brief? I'm sorry, Your Honor, the echo killed it. Excuse me? The echo killed it, he said. I couldn't understand the question. I want you to show me in your brief where you appealed the denial of the motion to amend your complaint. I'm very sorry, Your Honor. I said this was the only appeal ever filed. If I misspoke, I would correct that now. Well, in this appeal, have you appealed the denial of your motion to amend the complaint? Yes, Your Honor. Could you show me where that is? The other side says you didn't. In the opening brief, we cite three issues. It is stated under the statement of the case on page 3. It is stated again in the statement. What is it? Read it for me. Show me exactly where it is. The other side says you didn't appeal the motion, the denial of the motion to amend. The other plaintiffs were voluntarily dismissed pursuant to a stipulation by the parties after the motion to remand had been heard and decided. Issues presented. The second issue is the denial of Kerner's motion to dismiss, filed in order to seek dismissal of the action so as to pursue another action in state court. So that's the voluntary dismissal issue. Where's the motion to amend issue? It was a dual issue. It was filed at a single time. It was an alternative issue, Your Honor. Where is it in your brief that says you are appealing the denial of the motion to amend? The other side says it's not there. I'm giving you an opportunity to show us where it is. All right. It should be in the statement of the issues. It is. I understand the court's point. It's not there. Is it? It's discussed in the legal argument, Your Honor. It's not identified as an issue, is it? I'm not trying to trap you. I just want to find out the truth. I understand, Your Honor. One lawyer says green. The other says blue, up, down, A, non-A. He says you didn't appeal it. I didn't see it. And I'm asking, giving you the opportunity to show me where I'm wrong or where he's wrong. I defer to the court on that. Mr. Riegel wrote that opening brief. I understood that the issue was encompassed by the dual motion stated in the alternative. So it's not there. If he inadvertently left it out, he certainly discussed it in the legal arguments, that when he presented case law to the fact that you can either amend or dismiss, and he did discuss it in legal authority. Whether he raised it as one of the issues on appeal, he may have made an inadvertent error, Your Honor. Thank you, counsel. If I could reserve the rest of my time. First of all, in Appellate's Appendix, Volume 1, page 00082, in his answer to the complaint, I read to the court as its earlier question, has Ronald K. Alberts and Berger Kahn, it says, attorneys for Aetna U.S. Healthcare of California. That may be found in regard to that dispute. Judge Fares, you had raised the question, was Mr. Kerner the agent of record at the time this was entered into? That answer is an admission in their brief found on page 32, where they say that the letter going out to Mr. Kerner was dated November 11th, 1999, telling him that he would be dismissed January 1st, 2000. And I would point out to the court that today, as we sit here, Mr. Kerner remains broker of record for some of the policies of insurance that he had with this national group. In October 26th, he was terminated from the HMO with Kaiser. And on November 11th, he was terminated from the bulk of the balance of the cases. He still has a 125 policy and a dental policy, I believe. I would have to check that, Your Honor. But there's still several policies that he remains broker of record to today. I would now, in my remaining minutes, answer Judge Fares' question, if I might, as to what is the narrow issue. There is only one judge. Is there complete diversity under the United States Supreme Court holding in Caterpillar v. Lewis, 5-19 U.S. 61-1996 case? The question may not be, is there diversity jurisdiction? Do the pleadings on their face reflect diversity jurisdiction? Might that not be the question posed by this record, as it's before us? I believe, again, it's the answer I gave to a judge to you before, which is that the answer enters representation on behalf of Aetna U.S. Healthcare of California. That is a California corporation. That immediately destroys complete diversity. Second, the contract attached to the Kerner complaint is signed by an entity as U.S. Healthcare of California. I'm now going to be forced to use some of my remaining minutes to address that issue. You know, you got to, because you don't get another crack. He's argued, and you've argued, he's argued, you're in rebuttal. When you sit down this time, you're through. When a contract is signed, Judge, Mr. Kerner signs it and sends it back to, over to Aetna to countersign for their legal relationship. He sent it to them. They inadvertently attached two pages from a contract he had with Mettler Farms, another entity. Those two pages were inadvertently put into his file because Aetna sent him the wrong contract. The signature page was accurate. It was not discovered until the trial in district court that that had been done and it was Aetna's heir. Their own legal counsel, Laura Jackson, who filed the declaration herself, said there is no contract between Aetna of California and Mr. Kerner. She was wrong. She was wrong because Aetna made a mistake. Aetna made a mistake because it was their heir. Only the first page says it's Aetna U.S. Healthcare back east. The signature page says it's Aetna U.S. Healthcare of California. We didn't note it. We concentrated on the signature page. That's the narrow issue. That's how this Court should decide. That was before the Court. At the time, the motion for removal and remand were brought before it and certainly later on. I would like to spend one minute on the summary judgment issue. I'll give you ñ you're over your time, but go ahead. Thank you, Your Honor. I greatly appreciate that. The issue is control. The commission on this is $70,000 a year. Aetna goes to his client behind his back after they promised him they wouldn't and said, We can save you $70,000 if you dump Kerner. After 10 years ofó Where do we see that in this record? You see, that's the problem. We're going to decide this case on the record as it is before us. It's in the declaration of Lynn Robledo, which was filed in this Court. And it's also in the declaration of Bruce Lynn, which was filed in this Court. He specifically states, and I quote from him, If the broker doesn't have control, it's easy for the carrier to go directly to the client and say, I'll save you $70,000 if you sign on direct. I would point out to this Court, the year after Aetna told Heritage Medical Group that they would do a better job than Kerner, Heritage Medical Group fired them because they had lousy service. The public policy issue before this Court is, do we want to eliminate the brokers in California? Do we want to put the carriers directly to the clients? When that tried to occur, the brokers shut down Aetna and Aetna backed off. It's no longer an issue because Aetna found out they didn't sell any more insurance in California. Thank you, Mr. O'Brien. We can certainly see why you want to get this before a jury. The case just argued is order submitted. It's an interesting case. We'll get you a decision as soon as we can. Thank you very much, Judge Trott. And we'll then call the next case on the calendar, which is Miharis v. INS.
judges: Farris, Trott, Weiner